**TRUCK TRANSPORT INCORPORATED,**
Petitioner,

v.

**INTERSTATE COMMERCE COMMIS-SION and the United States of America, Respondents,**

**Younger Brothers, Inc., Intervenor.**

No. 79–1386.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 16, 1980.
Decided Sept. 4, 1980.

1024

Edward J. Kiley, Copiague, N. Y., for petitioner.

Denise M. O'Brien, Atty., I. C. C., Washington, D. C., with whom Mark L. Evans, Gen. Counsel, James P. Tuite, Deputy Associate Gen. Counsel, I. C. C., Robert B. Nicholson and Susan J. Atkinson, Attys., U. S. Dept. of Justice, Washington, D. C., were on the brief, for respondents.

Harry C. Ames, Jr., Washington, D. C., was on the brief for intervenor. Elizabeth A. Purcell, Washington, D. C., also entered an appearance for intervenor.

Before TAMM and WILKEY,* Circuit Judges, and RONALD N. DAVIES,** Senior District Judge for the District of North Dakota.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Truck Transport, Inc. (Truck) seeks review of an order of the Interstate Commerce Commission (ICC or Commission) granting Younger Brothers, Inc. (Younger) permanent authority to transport alcohol to various points in the United States. Truck contends that the evidence offered by Younger does not justify the Commission's grant of authority. It also believes that the Commission unlawfully considered Young-

---

* Circuit Judge Wilkey did not participate in the disposition of this case.

** Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

er's performance under its prior temporary authority in granting Younger permanent authority. We believe the Commission acted properly, and we therefore affirm.

## I. FACTUAL BACKGROUND

This dispute began when the primary transporter of liquor from Mexico into the United States, Drum Transport (Drum), went bankrupt in August of 1977. Younger soon thereafter offered its services to shippers to fill the void left by Drum's demise. It applied for and received from the Commission emergency temporary authority to transport liquor from the northern and southern borders to several domestic points.[1] Under this emergency authority, Younger transported 134 shipments. Toward the end of the emergency period, Younger sought and received regular temporary authority of a scope similar to its emergency authority.

Younger's application for permanent authority paralleled its prior temporary grant. In particular, it requested permission to transport bulk liquor shipments from northern and southern border points to points in the continental United States and between various domestic points.[2] Nine importers of alcohol supported this application.[3] They testified that Younger had performed well under its temporary authority in making deliveries to their thirteen plants. They also anticipated an increased need for carrier service due to the growing popularity of their major liquor imports, kahlua and tequila.

Truck protested the application. After Drum's bankruptcy, it had purchased Drum's operating rights for $1.5 million. During the hearing on Younger's application, Truck's application to assume Drum's operating authority was pending before the Commission.[4] At the hearing, Truck contended that it offered adequate service to the shippers supporting Younger's application.

The shippers, however, disagreed. They complained that Truck's shipments occasionally arrived late, that Truck did not even notify them promptly when these delays occurred, and that Truck's deliveries, even when not late, were often made at inappropriate times. In addition, the shippers stated that they simply wanted more than one carrier available to handle their shipping needs. Drum's bankruptcy had demonstrated the danger of entrusting all of their shipping to a single carrier; granting Younger's application would offer the shippers alternative carrier service and serve the public interest by fostering competition.

The Administrative Law Judge (ALJ) granted parts of Younger's application. He found the testimony of the nine supporting shippers to be representative of the needs of the liquor manufacturers and distributors who had used Drum as their carrier. In his decision, he stated:

> The record establishes that there is need for more than one permanently authorized carrier from the port of entry at

1. The Commission granted this temporary emergency authority pursuant to 49 U.S.C. § 10928 (Supp. II 1978), which states, in part, that the Commission "may grant a motor carrier . . . temporary authority to provide transportation to a place or in an area having . . . no motor carrier . . . capable of meeting the immediate needs of the place or area." *Id.*

2. Younger also noted in its application that it was negotiating to have Mexican carriers transport Younger's tank trailers from the border to the Mexican plants to pick up its shipments and then return to the border point. Such an arrangement would eliminate delays at the border and reduce the risk of contamination. *See* Younger Brothers, Inc., No. MC–531 (Sub.–No.

351), at 3 (ICC Oct. 4, 1978) (ALJ decision) [hereinafter cited as ALJ Decision], *reprinted in* Joint Appendix (J.A.) at 2, 4.

3. These shippers were Hiram Walker & Sons, Inc.; Marcell–Chicago Co.; Consolidated Distilled Products; Julius Wile Sons & Co., Inc.; David Sherman Corp.; Brown–Forman Distillers Corp.; Heublein, Inc.; Sazerac Co., Inc.; and Schenley Distillers, Inc.

4. The Commission approved Truck's application in Docket No. MC–F–13341, served Aug. 25, 1978. *See* Letter from Edward J. Kiley to ALJ Richard A. White (Aug. 30, 1978), *reprinted in* J.A. at 1.

Laredo [Texas]. Substantial and ever increasing quantities of tequila and kahlua produced in Mexico are moving north for sale in the United States. All traffic for the eastern United States market moves over the crossing at Laredo, and applicant until the expiration of its emergency grants handled a substantial volume. Its service was satisfactory . . . .

*Younger Brothers, Inc., No. MC–531* (Sub.– No. 351), at 16 (ICC Oct. 4, 1978) (ALJ decision) [hereinafter cited as *ALJ Decision*], reprinted in Joint Appendix (J.A.) at 2, 17.

Based on these findings, the ALJ approved Younger's request to transport liquor from Laredo to points in the eastern half of the United States.[5] Under this grant, Younger could operate in thirty–one states. On the basis of two shippers' testimony, the ALJ also granted Younger authority to carry liquor between points in Indiana, Kentucky, Tennessee, and Pennsylvania and points in California. He rejected the rest of the application.

The Commission affirmed. It agreed with the ALJ that the evidence of the nine shippers who testified was representative of the need for Younger's services. The Commission also reaffirmed its policy of issuing broad grants of authority, noting that atomizing those grants "would hinder applicant from providing the flexible service required." *Younger Brothers, Inc.*, No. MC– 531 (Sub.–No. 351), at 3 (ICC Div. 1, Mar. 19, 1979) [hereinafter cited as *Commission Decision*], reprinted in J.A. at 54, 56. Finally, the Commission believed that the grant of authority to Younger would increase competition and benefit the public. The Commission denied Truck's request for rehearing. Truck now seeks review of the Commission's decision.

## II. LEGAL ISSUES

Our scope of review in this case is narrow. As we recently noted, we review ICC orders only "to determine whether the agency's decision is supported by substantial evidence on factual matters and by a

rational basis concerning questions of law and the application of law to fact." *Harborlite Corp. v. ICC*, 613 F.2d 1088, 1093 (D.C.Cir.1979) *(footnote omitted).* Under our review for substantial evidence, we must uphold the Commission's findings if they are grounded on " 'enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict.' " *Illinois Central Railroad v. Norfolk & Western Railway*, 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966) (quoting *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939)). Our review for rationality is based on our statutory duty to overturn "arbitrary" or "capricious" agency decisionmaking. 5 U.S.C. § 706(2)(A) (1976). Under this standard, we "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . [T]he ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971) (quoted in *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974)). Given these controlling premises, we turn to Truck's claims.

In its petition, Truck charges the Commission with committing several procedural and substantive errors. It argues that the Commission unlawfully considered evidence of Younger's performance under temporary authority in considering that carrier's application for permanent authority. Truck further charges the Commission with an abuse of discretion in failing to consider evidence proffered by Truck to show that other carriers already had authority similar to that sought by Younger. Truck also asserts that the scope of the authority granted is unsupported by the evidence and is in contravention of congressional policies favoring the rational division of markets. We shall address these claims seriatim.

---

**5.** Liquor shipments for western states enter the United States through California border points.

### A. Consideration of Younger's Performance under Temporary Authority

█ Truck asserts that performance under temporary authority may not be used to justify a permanent grant. In support of this claim, Truck cites 49 U.S.C. § 10928 (Supp. II 1978) and *Willis Shaw Frozen Express, Inc. v. ICC,* 587 F.2d 1333 (D.C.Cir. 1978). Section 10928 states that "[a] grant of temporary authority does not establish a presumption that permanent authority to provide transportation will be granted . . . ." 49 U.S.C. § 10928 (Supp. II 1978). Thus, it is true, as stated in *Willis Shaw,* that temporary authority alone does not justify a grant of permanent authority. *See Willis Shaw Frozen Express, Inc. v. ICC,* 587 F.2d at 1339. The Commission grants temporary authority to meet the immediate needs of an area deprived of carrier service. *See* 49 U.S.C. § 10928 (Supp. II 1978). A different statute and different criteria control the Commission's consideration of an application for permanent authority. *See id.* § 10922(a). The applicant for permanent authority must be "fit, willing, and able" to provide the requested transportation, and the desired authority must meet "the present or future public convenience and necessity." *Id.*

Under this statutory scheme, the existence of temporary authority by itself is not probative of a carrier's fitness to receive a permanent grant. Performance under that temporary authority, however, gives the Commission valuable evidence of a carrier's fitness and ability to perform. In its decision in the present case, the Commission properly stated the value of this form of evidence:

> [W]hile temporary authority operations create no presumption that corresponding permanent authority should be granted, evidence of such operations may be considered relative to such factors as the volume of the traffic involved, the ability of applicant to provide the service, and the effect of a grant on existing services, see *Roadway Exp., Ext.--Birmingham, Dallas, Houston,* 82 M.C.C. 689, 703 (1960).

*Commission Decision* at 2, *reprinted in* J.A. at 55. The supporting shippers demonstrated the need for Younger's services; Younger's performance under temporary authority indicated its ability to meet that need. Such evidence alone is not dispositive, but it certainly is a relevant consideration that the Commission may properly take into account.

### B. Refusal to Take Official Notice

Truck next contends that the Commission in the *Younger* proceeding should have taken official notice of other Commission decisions and portions of other Commission records. The decisions concerned several applications by other carriers for authority to ship alcohol from Laredo, and the records dealt with testimony about carrier service already offered from that point. According to Truck, these decisions and records would have established that existing service from Laredo was adequate and would thus have required the Commission to deny Younger's request.

█ Regarding the records, we believe that Truck's failure to follow the regulations of the Commission justified its denial of Truck's request. Under Commission rules, anyone wishing to present evidence from a portion of the record of another proceeding must offer a "true copy of such portion . . . in the form of an exhibit." 49 C.F.R. § 1100.80 (1979). Rather than comply with this provision, Truck merely cited the evidence from the other records in its exceptions to the ALJ's report and requested the Commission to notice it officially. To receive official consideration, however, Truck must follow Commission procedures. *See Howard H. Kropf Extension–Cinders,* 76 M.C.C. 103, 105 (1958).

█ As for the other Commission decisions, we agree with Truck that the Commission might have taken official notice of its rulings in *Indian River Transport Co.,* MC–109709 (Sub.–Nos. 74 and 76) (ICC Rev.Bd. 4, June 30, 1978) and *Ayers and Maddux, Inc.,* MC–129262 (Sub.–No. 3) (ICC Rev.Bd. 3, Aug. 1, 1978). In these cases, the Commission had approved authority for

the shipment of liquor from Laredo to several of Hiram Walker's facilities. Truck believed this evidence would rebut any inference that it had a monopoly on carrier service from Laredo.

■ Even though Truck's argument for official notice might be sound, however, we believe that any error by the Commission was harmless. While not expressly taking official notice, the Commission did consider these cases in reaching its decision in *Younger Brothers.* The ALJ noted in his opinion that both Indian River and Ayers and Maddux had some authority from Laredo.[6] Such evidence did not alter his conclusion, however:

> In concluding that there is a need for [Younger's] service from Laredo, it is noted that Indian River in Docket No. MC–109708 (Sub–No. 74) *was recently granted* authority to haul alcoholic liquor from Laredo to Hiram Walker's four plant sites. This shipper is a substantial receiver of products from Mexico and [Younger] handled about 65 loads for this account from August through late December 1977. Accordingly, it is concluded that approval of the Indian River proceeding does not bar approval of the instant application.

*ALJ Decision* at 16, *reprinted in* J.A. at 17. Given this consideration of the other proceedings, the Commission's failure to take official notice, as such, was harmless and cannot serve as a basis for reversal.

## C. *Substantial Evidence*

Truck argues that the Commission decision is not supported by substantial evidence. First, concerning the authority to ship from Laredo, it believes that the testimony of nine shippers cannot justify a grant of authority encompassing thirty–one states. Second, concerning the additional authority to operate between four states in the midwest and California, Truck asserts that the Commission expanded the grant beyond that justified by the testimony of the two supporting shippers. Despite these contentions, we believe the Commission had before it " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)), and therefore we reject Truck's claim.

■ The Commission heard nine shippers in support of Younger Brothers' application for permanent authority to ship from Laredo. These shippers testified that shipments of liquor from Mexico were increasing due to the growing popularity of kahlua and tequila, their major imports. They believed their increasing carrier needs and their desire to have more than one available carrier warranted approval of Younger's application. The Commission found this testimony by the shippers "representative of the public need for [Younger's] proposed service from Laredo to points in the eastern half of the United States." *Commission Decision* at 2, *reprinted in* J.A. at 55.

This representative evidence may be used to support a grant of authority. As this court stated in *May Trucking Co. v. United States,* 593 F.2d 1349 (D.C. Cir. 1979),

> there is no requirement that data on need and benefit be gathered for every village and hamlet in the area of proposed operations before a certificate of such encompassing scope may be awarded. Were it otherwise, certificates would be cumbersome and perhaps confusing; carriers often could not assure themselves of the economy of full loads and backhauls; and the Commission would be denied the nor-

---

**6.** The ALJ noted:

> In a report served June 30, 1978, in No. MC–109708 (Sub.–No. 74), *Indian River Transport Co. Extension—Alcoholic Liquors,* Review Board No. 4 authorized the movement of alcoholic liquors from the border crossing at Laredo to Hiram Walker's facilities . . . . The record is not entirely clear, but it appears that there is through trailer service on tequila moving in the service of a Mexican carrier from origin to Nuevo Laredo (Republic of Mexico) and a carrier identified as Ayers & Maddux . . . . Apparently the same service is authorized on kahlua but it is not a practical route.

*ALJ Decision* at 5, *reprinted in* J.A. at 6.

mally reasonable inference that what is true for a fair sampling of locations is probably true for most. Thus, all that is required is evidence portraying the situation at a representative number of points. *Id.* at 1353. *See also National Trailer Convoy, Inc. v. United States,* 381 F.Supp. 878, 882 (N.D.Okl.1973) (three–judge court).

We believe the special circumstances of this case make this evidence particularly persuasive.[7] This controversy arose because Drum, the major transporter of imported liquor from Mexico, went bankrupt. This bankruptcy left a large void in carrier service: several shippers had no carrier with nationwide authority. Younger stepped in on a temporary basis and helped the shippers handle the growing volume of imports. The Commission, in seeking to fill the void left by Drum, wanted to ensure that shippers would have reliable service and would not face future disruptions in carrier availability. Having Younger available along with Truck serves to reduce the risk of such disruptions.

The shippers also expressed their dissatisfaction with Truck, which had acquired Drum's nationwide authority.[8] The ALJ found that Truck's "performance during the 3–month period when 12 of the 19 shipments handled were not delivered on schedule le[ft] something to be desired." *ALJ Decision* at 16, *reprinted in* J.A. at 17. This evidence certainly supports the need for additional carrier service from Laredo.

■ As for Younger's application to transport liquor from points in Indiana, Kentucky, Tennessee, and Pennsylvania to

and from points in California, the Commission relied on the testimony of two shippers. These shippers had formerly used rail carriers but had switched to motor carriers due to their superior service. Both had used Drum in the past, and both anticipated increased shipments of liquor in the near future. We believe this evidence was sufficient to justify the Commission's limited grant.

We thus reject both prongs of Truck's claim that the Commission's decision lacks substantial evidence. Having reached such a conclusion, our task is complete, for a decision grounded on substantial evidence must be affirmed. It is for the Commission and not the courts to "chart [the] boundaries" of grants of authority. *See May Trucking Co. v. United States,* 593 F.2d at 1353–54.

### D. Competition

■ As a final claim, Truck asserts the Commission in granting Younger's application violated its statutory duty "to encourage sound economic conditions in transportation, including sound economic conditions among carriers." 49 U.S.C. § 10101(a)(3) (Supp. II 1978). Such a violation occurred, Truck believes, because the Commission ignored the financial impact on Truck's operations caused by the grant to Younger. The Commission concluded, however, that the "benefits accruing to the shipping public" outweighed any adverse competitive impact on Truck, *Commission Decision* at 4, *reprinted in* J.A. at 57, and we agree.[9]

---

**7.** As this court stated in *May Trucking,* "[w]hat is legally required is shaped, of course, by the particular factual context, and the basic question . . . is still whether an inference of similarity throughout the area embraced by [the applicant's] certificate could rationally be drawn from the evidence presented." *May Trucking Co. v. United States,* 593 F.2d 1349, 1353 n.19 (D.C. Cir. 1979). In this case, we believe the Commission reasonably could find that the evidence justified the inference and the grant. *See* text.

**8.** *See* note 4 and accompanying text *supra.* The Commission noted in its decision that

at the time of the hearing Truck Transport was operating under temporary authority to lease the operating rights of Drum Transport pending the determination of Truck Transport's application for authority to purchase those operating rights. No permanent authority for serving the shippers had been vested in Truck Transport as of that time. Younger Brothers, Inc., No. MC–531 (Sub.–No. 351), at 3 (ICC Div. 1, Mar. 19, 1979), *reprinted in* J.A. at 54, 56.

**9.** On this question of competition, another court of appeals has stated:

[L]osses that competing carriers may suffer if a particular competitor is permitted to of-

██ In advancing its argument, Truck ignores the Commission's overriding duty to serve the public interest. Competition generally advances that interest. As this court stated in *May Trucking*, "[i]njury to existing carriers through competition becomes relevant only when there is corresponding injury to the public. Congress designed the Interstate Commerce Act to benefit the people, not to create protected monopolies for those who profess to serve the public." *May Trucking Co. v. United States*, 593 F.2d at 1356. The Commission, faced with Drum's bankruptcy, had to provide shippers of alcohol with alternative services. Having weighed the evidence, the Commission concluded that more service and more competition was desirable, and therefore both Truck and Younger received authority to carry the alcohol.[10] Indeed, as the Commission noted in its decision, Truck's authority

> provide[s] it with an opportunity to participate in transporting the considered traffic, not a right to exclude what we feel is an additional, flexible service by [Younger]. [Younger's] operations will provide needed competition in the considered markets which will enhance overall service. It is up to Truck Transport, a relatively new entrant itself in these markets, to garner traffic by responsive service.

*Commission Decision* at 3, *reprinted in* J.A. at 56. Truck does not have a statutory right to a profit; it must provide satisfactory service to merit a return. The market, and not the Commission, will determine who receives the lion's share of the business.[11]

### III. CONCLUSION

When Drum went bankrupt, Younger Brothers stepped in to provide service to shippers of alcohol. It served its customers well by providing conscientious service. The Commission found that the public convenience and necessity warranted having at least two carriers of alcohol from Laredo to points in the United States. We agree with the Commission that Younger should be one of those carriers. The order of the Commission is

*Affirmed.*

---

fer a new service or to expand an existing one must be balanced against the public interest in having the new or expanded service provided, and we think that the balancing function is one that is peculiarly within the competency of the Commission. *Midwest Coast Transport, Inc. v. ICC*, 536 F.2d 256, 260 (8th Cir. 1976).

**10.** *Granting additional authority over existing routes is clearly permissible. See United States v. Dixie Highway Express, Inc.*, 389 U.S. 409, 411–12, 88 SCt. 539, 540–41, 19 L.Ed.2d 639 (1967) (per curiam).

**11.** We have considered Truck's other contentions and find them to be without merit.