Margaret ABIONA, Jill Altman, Rodolfo T. Domingo, Jeffrey Gropper, Kwang Ho Kim, June Woo Lee, William Mairino, Terence O'Malley, Thomas Tomaselli, V. Venkatachalam, Jay Stein, Lawrence Minowitz, Richard Moore, Richard Peters, John Pilliterri, Individually and on behalf of others similarly situated, Plaintiffs,

v.

Tommy THOMPSON, Secretary of Health and Human Services, Defendant.

No. CV00–3994(DRH)(MLO).

United States District Court, E.D. New York.

Dec. 4, 2002.

Landy & Seymour, New York, NY by Whitney North Seymour, Jr., for Plaintiffs.

United States Attorney's Office, Civil Division, Brooklyn, NY by Kevin P. Mulry, for Defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Plaintiffs, assignees of Medicare claims for reimbursement of certain pain management services provided by anesthesiologists, brought this action challenging the

Secretary of Health and Human Services' determination that separate reimbursement was not allowed absent a showing of medical necessity. The action alleges that the Secretary's determination was unsupported by substantial evidence and violative of procedural due process. The parties filed cross-motions for judgment on the pleadings. Plaintiffs also made a motion for certification of the class of assignee anesthesiologists. For the reasons discussed *infra*, the Court grants Defendant's motion for judgment on the pleadings and denies Plaintiffs' motions.

## I. BACKGROUND

### A. Procedural Facts.

The named plaintiffs ("Plaintiffs") commenced this action to challenge the Secretary of Health and Human Services' ("Secretary") policies regarding Medicare reimbursement for routine post-operative patient controlled analgesia [1] ("PCA") services administered by anesthesiologists. Plaintiffs are all anesthesiologists, practicing in New York, who individually administered surgeon-directed PCA services to Medicare beneficiaries. The Medicare beneficiaries subsequently assigned their claims for reimbursement to each of the Plaintiffs.

The Plaintiffs' resulting reimbursement claims were each denied by the carrier, Empire Medical Services ("Empire"). The Plaintiffs then requested carrier hearings. In each case, the hearing officer issued a formal decision denying reimbursement. Discrete groups among the Plaintiffs then aggregated their claims (to meet the jurisdictional amount) and requested hearings before an Administrative Law Judge ("ALJ"). *See* 42 C.F.R. § 405.817(b). In each case, the ALJ reversed the hearing officer and held that Plaintiffs were entitled to separate reimbursement for anesthesia services related to PCA. In each case, the ALJs relied upon testimony and declarations of anesthesiologists and physicians (including the testimony of Plaintiffs) to render decisions in Plaintiffs' favor. Based on this testimony, the ALJ's found that there was no national policy regarding the payment of PCA services provided by anesthesiologists.

The Centers for Medicare and Medicaid Services ("CMMS") sent some of these ALJ decisions (those rendered by Judge Nisnewitz) to the Departmental Appeals Board ("Board") with the recommendation that the Board take own-motion review of those decisions. On April 7, 1999, the Board issued a notice of proposed action and a proposed order of remand. Plaintiffs filed a timely objection to the Board's proposed action, citing other favorable ALJ decisions and requesting oral argument. On June 24, 1999, the Board notified the Plaintiffs that it would accept additional submissions and hear oral argument regarding the existence of a national policy for the payment of PCA services rendered by anesthesiologists. The Board also consolidated all appeals from Plaintiff's ALJ decisions into a single case for review and requested that CMMS submit a position paper addressing the issues presented.

On May 15, 2000, following submission of the CMMS position paper, a brief from Plaintiffs and oral argument via telephone, the Board issued its final decision. The Board reversed the ALJs' decisions and held that, consistent with established CMMS policy, payment for PCA services rendered by anesthesiologists are included in the global surgical fee, not via separate payment to the anesthesiologist. The Board also noted that separate payment could be made where the documented severity of the Medicare beneficiary's condi-

---

1. Analgesia simply means relief of pain.

tion required consultation with a pain therapist. However, no such documentation was made in the instant case.

On July 11, 2000, Plaintiffs sought timely judicial review of the Board's decision by filing a complaint in this Court. On August 7, 2001, the parties filed cross-motions for judgment on the pleadings and Plaintiffs' motion for class certification. The Court disposes of these pending motions at this time.

### B. Medicare Facts.

This action arises under 42 U.S.C. §§ 1395–1395ggg, which establishes the Medicare program. Medicare is a federally funded health care program for the elderly and disabled. Part B of the Medicare program provides supplemental insurance benefits to cover certain diagnostic, outpatient and physician services to Medicare beneficiaries. *See Schweiker v. McClure,* 456 U.S. 188, 190, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982).

This portion of Medicare is administered by the Health Care Financing Administration ("HCFA"), a branch of the Department of Health and Human Services ("DHHS"), in conjunction with private "carriers" that have entered into contract with the Secretary. (The carrier in this case is Empire.) The Secretary possesses the authority to decide which items or services are included under Part B. *See* 42 U.S.C.A. § 1395ff(a). The Secretary utilizes regulations, *see* 42 C.F.R. § 411, *et seq.,* the Federal Register and manuals to direct carriers as to which circumstances require Medicare reimbursement. *Furlong v. Shalala,* 238 F.3d 227, 229 (2d Cir.2001). These regulations and the Federal Register are binding upon the carriers. *Id.*

As amended in the Omnibus Budget Reconciliation Act of 1989, reimbursement is now made in accordance with a "fee schedule" for physicians' services. *See* 42 U.S.C. § 1395w–4; *see also Medical Soc. of State of N.Y. v. Cuomo,* 976 F.2d 812, 814–815 (2d Cir.1992). This fee schedule "reflect[s] an objective evaluation of the physician resources required to provide a particular service or the amount that the physician actually charged." *Medical Soc.,* 976 F.2d at 814. The Secretary establishes, through regulation, a fee schedule for all physicians' services before January 1 of each year. 42 U.S.C. § 1395w–4(b)(1). Physician anesthesia services are expressly addressed in these fee schedules.[2] *See* 42 U.S.C. § 1395w–4(b)(2)(B).

Rather than allow piecemeal reimbursement for individual procedures performed in connection with surgery, certain physicians' services are collectively embraced by a "global surgical fee." 42 U.S.C. § 1395w–4(c)(1)(A). This fee is meant to embrace the "pre-operative and post-operative physicians' services" connected with surgical procedures. *Id.* However, Congress delegated to the Secretary the responsibility to define which specific services should be included in the global surgical fee. 42 U.S.C. § 1395w–4(c)(1)(A)(ii).

The preamble of the physician fee schedule rule addressed the reimbursement of acute post-operative pain management services provided by physicians. Responding to "approximately 95,000" public comments, the Secretary stated the following national policy:

> Acute post-surgical pain management services are generally furnished by the surgeon. Under the fee schedule, these services by the surgeon are included in the surgeon's global payment and are not separately billed. We recognize, however, that there are certain special situations when a patient's acute post-

---

**2.** All physicians' services are assigned a numeric code. 42 U.S.C. § 1395w–4(c)(5).

surgical pain may be so severe as to require consultation or treatment by another specialist such as an anesthesiologist. Our policy for these situations will be to allow separate billing by the pain specialist if the service is documented as being medically necessary. This policy is consistent with our policy for other instances of concurrent care. If, however, we find that referral to a pain specialist becomes routine, we will direct carriers to reduce the global payment for the surgery accordingly.

56 Fed.Reg. 59,561 (November 15, 1991). This policy applies to physician services, such as those at issue in the instant case, provided on or after January 1, 1992. *See* 56 Fed.Reg. 59,502.

On May 29, 1992, the HCFA, the administrator of Part B medicare benefits for the Secretary, issued a Memorandum regarding "Policy Issues Flowing from the Carrier Medical Directors' Meeting." *See* Bureau of Program Development, HCFA, Medicare & Medicaid Guide, ¶ 40,375 at 31,531. In relevant part, the Memorandum stated:

The Surgeon should manage postoperative pain except under special circumstances. If postpay audits reveal that a surgeon's patients routinely receive pain management from an anesthesiologist, the global fee for the surgeon should be reduced .... *Payment for physician services related to patient controlled anesthesia (PCA) is included in the global fee paid to the surgeon.*

*Id.* at 31,568 (emphasis added). This Memorandum was distributed to all regional offices and ultimately to the carriers. Empire, the carrier in this case, issued a memorandum instruction repeating the policy contained in this Memorandum on June 23, 1993.

C. Medicare Claims and Appeals.

A claim for Medicare reimbursement must first be filed in writing with the carrier within a specified period after the services are furnished. 42 U.S.C. § 1395u(b)(3)(B). The carrier determines whether the claimed services have been provided to a Medicare beneficiary and whether those services are covered by Part B. The carrier rejects claims that are not covered and pays the proper amount for the covered services. The determination notice is sent to the beneficiary and any assignee. Reimbursement, when the claim is assigned, is sent to the assignee.

Should the carrier deny reimbursement, the interested party (assignee in this case) must request review of the claim within 6 months. If still dissatisfied after the carrier review determination, the interested party may request a *de novo* hearing before an ALJ if the amount in controversy is greater than $500. The ALJ must decide the claim "based on the evidence of record, under applicable provisions of the law and regulations and appropriate precedents." 42 C.F.R. § 402.203(c); *see also* 62 Fed.Reg. 25,848 ("ALJs are bound by the provisions of the Medicare law, Departmental regulations and SSA regulations incorporated by Departmental regulations, and other issuances as provided for by law or regulation (such as HCFA Rulings described in 42 CFR [§ ] 401.108(c), SSA Rulings in 20 CFR [§ ] 422.406(b)(1), and national coverage decisions based on [42 U.S.C § ] 1862(a)(1) ....)"). In the instant case, the ALJ rendered a decision favorable to Plaintiffs.

The regulations provide that any dissatisfied party may request that the Board review an ALJ judgment. 42 C.F.R. § 405.856 (incorporating 20 C.F.R. § 404.967). The regulations further provide that the Secretary may identify cases to refer to the Board for possible exercise of its own-motion review power. 42 C.F.R. § 405.856 (incorporating 20 C.F.R. § 404.969(a)) ("Anytime within 60 days af-

ter the date of a[n ALJ] decision or dismissal that is subject to review under this section, the Appeals Council may decide on its own motion to review the action that was taken in your case. We may refer your case to the Appeals Council for it to consider reviewing under this authority)". This is the procedure that was followed in the instant case: the HCFA forwarded certain of these ALJ decisions to the Board which ultimately decided to exercise its own-motion review power.

The Board's review of an ALJ decision is limited to the same types of evidence as the ALJ. 62 Fed.Reg. 25,858. The Board, in rendering its decision, may affirm, modify, remand, or reverse the ALJ's decision. 42 C.F.R. § 405.856 (incorporating 20 C.F.R. § 404.979). In this case, the Board reversed the decisions of the ALJs. Since the amount in controversy is over $1000, the Plaintiffs, the dissatisfied parties in the Board's decision, could seek judicial review of the decision in this court. 42 U.S.C. § 1395ff(b)(1)(A).

## II. DISCUSSION

 In resolving motions made pursuant to Fed.R.Civ.P. 12(c), a court is generally limited to considering the factual allegations set forth in the pleadings. Consideration of materials outside the pleadings will convert the motion to one for summary judgment. *See* Fed.R.Civ.P. 12(c); *University Hosp. v. Bowen,* 684 F.Supp. 1234, 1235 n. 1 (S.D.N.Y.1988). However, the parties may incorporate certain materials into their pleadings. *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Here, the parties refer to the administrative record, regulations, and ALJ decisions in the pleadings. Therefore, these documents are deemed

incorporated in the pleadings and may properly be considered by the Court. *Id.*

 A party is entitled to judgment on the pleadings only if no material issues of fact remain to be resolved. *See Juster Assocs. v. Rutland,* 901 F.2d 266, 269 (2d Cir.1990). Neither party has identified any disputed material fact. Accordingly, the only question before the Court is whether either party is entitled to judgment as a matter of law.

### A. The Board's Decision.

 Review of the Board's decision[3] is provided pursuant to 42 U.S.C. § 1395ff(b)(1)(C). This Court must uphold the Board's findings of fact if they are supported by substantial evidence. *See Keefe o/b/o Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir.1995); 42 U.S.C. § 405(g). Substantial evidence must constitute "more than a scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). On the other hand, the Board's conclusions of law are reviewed *de novo. Keefe,* 71 F.3d at 1062.

 In the instant case, the Board relied upon a preamble to the fee schedule and a widely distributed Memorandum to support their conclusion that there was a national policy to include these anesthesiologist PCA services in the Global Surgical Fee. The Secretary's regulations are entitled to controlling weight unless they are "arbitrary, capricious, or manifestly contrary to the statute," *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its manual is given substantial deference unless another

---

**3.** Since the Board is an aspect of the Secretary, other courts often refer to the deference afforded to the "Secretary's" decision. *See, e.g., Keefe,* 71 F.3d at 1062. Still, the Board's

decision is the subject of Plaintiffs suit. As such, in the interest of clarity and precision, this Court refers to the "Board" when discussing the review of the ALJs' decisions.

reading is compelled by the regulation's plain language, see *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 510–512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). Because Congress has expressly delegated to the Secretary the responsibility for determining who is embraced by this global surgical fee, the Secretary in exercising that authority "is at the zenith of its powers;" the Secretary's fee schedule, therefore, is "entitled to 'more than mere deference or weight.'" *American Trucking Assn's, Inc. v. United States*, 627 F.2d 1313, 1320 (D.C.Cir.1980) (quoting *Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977)). As the Supreme Court recently recognized, "express congressional authorizations to engage in the process of rulemaking" are "a very good indicator of delegation meriting *Chevron* treatment." *United States v. Mead Corp.*, 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

■ Under settled principles, we are not to substitute our own judgment for that of the agency. *See e.g., Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Rather, we must ascertain whether the Secretary's fee schedule and subsequent interpretation (via Memorandum) were based upon a consideration of the relevant factors and whether the Board committed any clear errors of judgment. *Volpe*, 401 U.S. at 416, 91 S.Ct. 814; *Truck Transport, Inc. v. ICC*, 631 F.2d 1023, 1026 (D.C.Cir.1980).

■ This Court holds that there is nothing to suggest that the regulations are contrary to the statute or that either the preamble or the manual is inconsistent with the regulations. Congress expressly delegated to the Secretary the responsibility of determining which physician services were included in the Global Surgical Fee. *See* 42 U.S.C. § 1395w–4(c)(1)(A)(ii). The Secretary followed this mandate by issuing regulations that stated:

> Acute post-surgical pain management .... is included in the surgeon's global payment and are not separately billed. We recognize, however, that there are certain special situations when a patient's acute post-surgical pain may be so severe as to require consultation or treatment by another specialist such as an anesthesiologist. Our policy for these situations will be to allow separate billing by the pain specialist if the service is documented as being medically necessary.

56 Fed.Reg. 59,561. Plaintiffs do not dispute that PCA services are included in the "acute post-surgical pain management" that is described by this regulation. Likewise, Plaintiffs do not dispute that this regulation was properly issued in accordance with rulemaking procedures. On the basis of this regulation alone, the Board's decision that there is a national policy against the separate payment of PCA services is supported by substantial evidence. However, the Board went beyond this regulation to provide support for its conclusions.

■ The Board also relied upon a Memorandum from the HCFA to the carriers. *See* Bureau of Program Development, HCFA, Medicare & Medicaid Guide, ¶ 40,375 at 31,531. In relevant part, the Memorandum stated: "Payment for physician services related to patient controlled anesthesia (PCA) is included in the global fee paid to the surgeon." *Id.* at 31,568 (emphasis added). Plaintiffs strenuously argue that this Memorandum is not entitled to *Chevron* deference. To the extent that Plaintiffs argue that this Memorandum is entitled to less deference than the above quoted regulation, their contention appears to be supported by the Supreme

Court precedent. *See Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Administrative documents, whether opinion letters, manuals, policy statements or guidelines, that are not subject to the requirements of the Administrative Procedure Act, "are 'entitled to respect' ... but only to the extent that those interpretations have the 'power to persuade.'" *Id.* at 587, 120 S.Ct. 1655.

Still, some level of deference is still proper under these facts. "Generally, the weight given to an agency's decisions 'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Detsel by Detsel v. Sullivan*, 895 F.2d 58, 65 (2d Cir.1990) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). Plaintiffs argue that the memorandum was neither thorough nor was its reasoning valid. However, this Memorandum is consistent with the regulation discussed *supra*. Moreover, Plaintiffs' suggestion that *no* deference should be granted to the Board's interpretation of the regulations is unpersuasive. *See, e.g., Auer v. Robbins*, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (attaching deference to interpretation of regulations promulgated under the Fair Labor Standards Act contained in an *amicus brief* from the Secretary of the Department of Labor). Therefore the Memorandum, while not accorded *Chevron* deference, is due substantial deference. *Soler v. G. & U., Inc.*, 833 F.2d 1104, 1108 (2d Cir.1987) ("An agency's construction of its own regulation is entitled to substantial deference.").

 Plaintiffs argue that, in light of the evidence that surgeons never provide PCA, the Board's decision was arbitrary and capricious. The Administrative Procedures Act provides, in part: "The review-

ing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706. Where, as in the instant case, the statute expressly authorizes the Secretary to implement a provision by regulation, review is limited to determining whether the regulations exceed the statutory grant of authority and whether they are arbitrary and capricious. *See Heckler v. Campbell*, 461 U.S. 458, 466, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

 While the evidence provided by Plaintiffs states that no surgeons administer PCA services, the Court is not persuaded that this evidence renders the Board's decision arbitrary and capricious. First, as noted by the Secretary, the Board rendered a decision based upon a national policy to not provide for automatic separate payment of PCA services. The provided evidence was primarily submitted by New York area anesthesiologists, most of whom are parties to this suit. Such "local" evidence only provides limited evidence that the national policy is arbitrary and capricious. *See Necketopoulos v. Shalala*, 941 F.Supp. 1382, 1391 (S.D.N.Y. 1996). However, assuming *arguendo* that Plaintiffs evidence did provide persuasive evidence that the Board's interpretation of the regulation was arguably incorrect, this Court would not necessarily declare the Board's decision invalid. "Even if a court concludes that its alternative construction of the agency's regulation is 'more equitable' or 'more reasonable,' the agency's interpretation of its regulation is not thereby rendered invalid." *Soler v. G. & U., Inc.*, 833 F.2d 1104, 1108 (2d Cir.1987).

 Instead, the Court should find agency action to be arbitrary and capricious only if it determines that the agency:

relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Review of the Board's decision and Plaintiffs' contentions show that the Board reached a conclusion that is consistent with the evidence. Therefore, after finding that the regulation warrants *Chevron* deference, finding that the Board's denial of separate payment for PCA services is consistent with that regulation and that the Memorandum lends some additional support for the Board's conclusions, this Court finds that the decision was supported by substantial evidence and not arbitrary and capricious.[4]

### B. Due Process.

■■■■ Plaintiffs allege that Board violated Plaintiffs' due process rights by responding to *ex parte* communications from the HCFA, issuing a proposed action prior to allowing briefing on the issue, and prejudging their case. To be entitled to due process rights in this case, Plaintiffs must have a protected property or liberty interest. *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Furlong v. Shalala,* 156 F.3d 384, 392–393 (2d Cir.1998). In the

instant case, the purported interest derives from federal law or regulations rather than from the Constitution itself. In order to have a legitimate interest derived from federal law or regulations, Plaintiffs must possess a "legitimate claim of entitlement," not merely a "unilateral expectation." *Furlong,* 156 F.3d at 393 (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

The Second Circuit has previously held that professionals who provide services under Medicaid or Medicare have a property interest in reimbursement for their services at the "duly promulgated reimbursement rate." *See Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir.1984) (holding Medicaid providers have a "property interest in money paid for services already performed in reliance on a duly promulgated reimbursement rate"). However, the rate is not at issue here. Rather, the parties dispute the right to automatic reimbursement for PCA services rendered by a anesthesiologist. To bolster their claim for a cognizable due process interest in that reimbursement, Plaintiffs have only identified a case wherein the Second Circuit assumed without discussion that an interest existed for Medicare reimbursement claimants. *See Isaacs v. Bowen,* 865 F.2d 468, 475 (2d Cir.1989). However that case involved claims that were admittedly covered by the Medicare Act for immediate reimbursement. *Id.* at 476. Plaintiffs have failed to identify any other source for the legitimate claim to reimbursement for these services.[5] *Cf. Kelly Kare v. O'Rourke,* 930 F.2d 170, 175 (2d Cir.1991)

---

4. It should be noted that this does not mean that there cannot be reimbursement for PCA services under Part B. Rather, no reimbursement will automatically be made for PCA services rendered by an anesthesiologist. Reimbursement may still be made if the "medical necessity" of the PCA services is documented when the claim is made. *See* 56 Fed.Reg. 59,561. Plaintiffs made no attempt to document that necessity at the time of filing.

5. Perhaps the strongest argument available to Plaintiffs is that the ALJ decisions below cre-

("If the ... [Medicare] regulation ... vests in the state significant discretion over the continued conferral of that benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit.").

■ Assuming *arguendo* that Plaintiffs possess a valid interest in reimbursement for PCA services rendered by anesthesiologists, Plaintiffs' due process rights were not violated. The Court turns first to Plaintiffs' arguments stemming from the "ex parte" communications with the Board. The regulations provide that the Secretary may identify cases to refer to the Board for possible exercise of its own-motion review power. 42 C.F.R. § 405.856 (incorporating 20 C.F.R. § 404.969(a)). Moreover, it does not appear that, even without statutory provision, communications recommending that an agency review ALJ decisions violate due process. *See Zamora v. Immigration and Naturalization Service,* 534 F.2d 1055, 1059–1060 (2d Cir.1976) (holding that *ex parte* letters requesting review of INS determinations did not violate due process).

■ Plaintiffs allege that review was not done in a timely manner after the ALJ decision. However, the Court cannot ascertain how, if this allegation is true, the failure to review beneficial ALJ decisions within a certain timeframe impacts Plain-

tiffs' purported interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546–547, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (holding that mere allegation of 9 month delay before initiating administrative action was insufficient to create a cognizable due process claim). Moreover, given the complicated procedural history of Plaintiffs' disparate claims, it is unclear how quickly the Board could have acted to initiate its own motion review of all cases. *Cf. Schweiker v. McClure,* 456 U.S. 188, 196–199, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) (holding that the limited review provided for Part B claims comports with due process).[6]

■ Finally, plaintiffs allege that the Board's issuance of a proposed action prior to briefing was a violation of their due process rights. The Court is not persuaded. Predeprivation procedures must provide "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges ... are true and support the proposed action." *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 545–546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). However, this due process requirement must only be satisfied prior to a *final* determination. *See Campo v. New York City Employees' Retirement Sys.,* 843 F.2d 96, 100 (2d Cir.1988).[7] As the

---

ated a consistent and constant pattern of decisions that establish a property interest. *See Furlong,* 156 F.3d at 395. Still it is unclear whether those decisions establish a "consistent practice by a decisional body." *Id.* The ALJ decisions appear to represent parallel decisions that were collectively overturned by the Board. *Id.* However, as noted *supra,* the Court avoids ruling on whether an interest exists in order to reach the merits of the due process claim.

**6.** Plaintiffs also complain that the Board lost the evidence supporting the ALJ's decision. The Court does not fully understand this contention, as Plaintiffs admittedly provided the

lost evidence to the Board prior to the final decision. Plaintiffs' Combine Reply Memorandum at 12. As alleged, the Court sees no deprivation of any interest.

**7.** Plaintiffs also suggest that the proposed action is evidence that the Board was not impartial. The Supreme Court has unequivocally stated that an agency decisionmaker is not disqualified "simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Hortonville Joint School District No. 1 v. Hortonville Ed. Ass'n,*

proposed action was not final and was followed by due process, Plaintiffs fail to articulate a cognizable claim.

## III. CONCLUSIONS

For the reasons discussed *supra*, the Court grants Defendant's motion for judgment on the pleadings. For the same reasons, Plaintiffs' cross-motion for judgment on the pleadings is denied.

 With regard to the pending motion for class certification, the Second Circuit "has specifically held that it is within a district court's discretion to reserve decision on a class certification motion pending disposition of a motion to dismiss." (*Christensen v. Kiewit–Murdock Investment Corp.*, 815 F.2d 206, 214 (2d Cir. 1987)). At the same time, where the court decides to enter judgment on the merits in favor of defendants, certification of a plaintiff class "could only serve to prejudice absent class members." *Benfield v. Mocatta Metals Corp.*, No. 91 Civ. 8255(LJF), 1993 WL 148978, at *2 (S.D.N.Y. May 5, 1993). As such, the motion to certify the class is denied.

The Court notes that, on October 29, 2002, Magistrate Judge Michael L. Orenstein issued an order requiring the Secretary to respond to all interrogatories regarding numerosity of New York Anesthesiologists within 60 days. The Secretary filed notice of objections to that order on November 13, 2002. The Court now denies those objections as moot. *New York Islanders Hockey Club, LLP v. Comerica Bank–Texas*, 71 F.Supp.2d 108, 121 (E.D.N.Y.1999). Moreover, the standard of review in hearing objections to decisions of a magistrate judge under 28 U.S.C. § 636(b)(1)(a) is whether the Magistrate Judge's decision is "clearly

erroneous or contrary to law." *See also* Fed.R.Civ.P. 72(a); *Bergstein v. Jordache Enterprises, Inc.*, 841 F.Supp. 546 (S.D.N.Y.1994). On the merits, giving deference to Judge Orenstein's decision, this Court cannot say that the decision not to stay discovery was either "clearly erroneous" or "contrary to law."

The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

426 U.S. 482, 493, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976) (quoting *United States v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)). In the instant case, there has been

no showing that would overcome this presumption. (Parenthetically, the Court also notes that it has conducted a *de novo* review of the Board's conclusions of law.)